IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 20-CR-276-GKF |
| ) | |
| SHANNON JAMES KEPLER, ) | |
| ) | |
| Defendant. ) | |

**O R D E R**

This matter is before the Court on the Government's Motion for Detention [ECF ##12, 13].

Shannon James Kepler ("Kepler") faces three charges in this Court: 1) Murder in the First Degree in Indian Country, 18 U.S.C. §§1151, 1153 & 1111; 2) Causing Death by Using and Discharging a Firearm During and in Relation to a Crime of Violence, 18 U.S.C. §924(j); and, 3) Assault With a Dangerous Weapon in Indian Country, 18 U.S.C. §§1151, 1153 & 113(a)(3).

**I.
BACKGROUND**

Because of the lengthy history behind this case, a short summary of events is in order. Kepler and his wife, Gina, were Tulsa police officers. In 2002, they adopted a six-year-old girl, Lisa. Lisa had behavioral and other issues, and after many attempts at treatment over the years, in July 2014, the Keglers resorted to a sort of "shock therapy": they left Lisa, then 18, at the

1

homeless shelter in downtown Tulsa. There, Lisa became acquainted with Jeremy Lake and soon began a romantic relationship.

On the evening of August 5, 2014, Shannon Kepler drove to Lake's home and encountered Lisa and Lake on the street. A confrontation turned violent, and Kepler fire multiple shots at Lake, killing him. He also fired several shots in the direction of Lisa and a minor, M.H., who was Lake's half-brother.

The evidence proffered at the Detention Hearing held November 23, 2020, established the following timeline:

August 5, 2014 – Kepler fired multiple shots from his revolver, striking and killing Jeremy Lake. Kepler, left the scene of the shooting and called his wife, who met him and arranged for an attorney to accompany her husband to the police station, where he turned himself in.

November 10, 2016 – Kepler faced trial in Tulsa County District Court. At this first trial, Kepler was convicted on two counts of reckless conduct with a firearm by firing shots in the direction of his daughter Lisa Kepler and M.H. The jury was unable to reach a verdict on the underlying homicide charge and declared itself hung.

February 17, 2017 – Kepler's second trial for murder resulted in a hung jury.

July 7, 2017 – Kepler's third trial for murder resulted in another hung jury.

November 20, 2017 – at the fourth murder trial, the jury convicted Kepler of First-Degree Manslaughter, a lesser-included offense of First-Degree Murder. Kepler was taken into custody.

Between August 2014 and November 2017, Kepler was free on bond. He appeared for his (estimated) 60 Court appearances and did not violate any release conditions. During his three years in custody, Kepler has had no misconduct write-ups within the Oklahoma Department of Corrections.

While his appeal of the 2017 conviction was pending with the Oklahoma Court of Criminal Appeals, the U.S. Supreme Court rendered its decision in *McGirt v. Oklahoma*, 591 U.S. --, 140 S.Ct. 2452 (2020). In *McGirt*, the Supreme Court found that Congress had never disestablished the Creek Nation Indian reservation, and that, as a result, jurisdiction over certain crimes committed in Indian Country rested solely with either Tribal Courts or Federal Courts.[1] As a result of the *McGirt* decision, in August 2020, the Court of Criminal Appeals remanded Kepler's appellate case back to Tulsa County District Court for an evidentiary hearing and fact-finding regarding the application of *McGirt* to Kepler. Just two weeks ago, Tulsa County District Judge Tracy L. Priddy found that Kepler "is an Indian and that the crime for which he was convicted occurred in Indian Country for purposes of the General Crimes Act, 18 U.S.C. §1152 and the Major Crimes Act, 18 U.S.C. §1153." *Amended Findings of Fact and Conclusions of Law*, (Tulsa County Dist. Ct., Nov. 12, 2020). Judge Priddy's Findings and Conclusions have been submitted

---

[1] Kepler contends he is a citizen of the Muscogee(Creek) Nation.

to the Oklahoma Court of Criminal Appeals. If affirmed, this would mean that Tulsa County District Court lacked jurisdiction over Kepler in his State court trials. Kepler remains in State custody awaiting the Court of Criminal Appeals' review of Judge Priddy's Findings.

Anticipating that Kepler's State court convictions will be vacated, on November 5, 2020, the U.S. Attorney for the Northern District of Oklahoma indicted Kepler on the three counts set forth above. On November 23, 2020, Kepler was arraigned on these charges and the Court then conducted a lengthy detention hearing.

## II.
## DISCUSSION

18 U.S.C. §3142(g) lists the factors for a Court's consideration in determining the issue of pre-trial detention.

### A. Government's View of the Detention Factors

The Government relies most heavily on two factors: the nature of the crime §3142(g)(1) and the weight of the evidence §3142(g)(2).

The crimes alleged are crimes of violence as defined in 18 U.S.C. §16. This favors detention.

The Government also cites the weight of the evidence. The Government states that there is no question that Kepler shot and killed Jeremy Lake. Kepler himself has testified to that effect. As the Government put it at the Detention Hearing, there is no dispute that Kepler shot and killed Lake, the only question is why. Kepler claims he shot in self-defense.

### B. The Defense View of the Detention Factors

The defense first challenges the Government's position on the weight of the evidence, suggesting the evidence can't be of great weight since "it took [the State] four tries" to get a conviction on a lesser-included offense. Four Tulsa County juries were presented the State's evidence on First-Degree Murder, and none of the four convicted Kepler on that charge. The first three juries – November 2016, February 2017 and July 2017 – all hung on the murder count. They could not agree on acquittal or conviction. In October 2017, a fourth jury also did not convict Kepler for First-Degree Murder; instead, it convicted him of First-Degree Manslaughter. The defense contends this hardly shows that the weight of the evidence heavily favors the Government.

The defense also points to the various issues outlined in §3142(g)(3). These are matters related to the defendant's character, family ties, criminal history and the like. The record evidence shows that Kepler served honorably as a Tulsa Police Officer for 25 years. There is no evidence of citizen complaints about his performance. Nor does Kepler have any relevant criminal history. His family ties are strong. The Government conceded at the Detention Hearing that Kepler has "extremely solid family ties." Both Kepler's wife, Gina, and his daughter, Lisa, were witnesses on his behalf at the Detention Hearing. Kepler is a lifelong resident of the Tulsa area, and has no history of substance abuse or mental health issues. In addition, he has an offer of employment from an insurance company and offered several letters of community support

attesting to his character. During the three years he was on bond pending trials in Tulsa County, Kepler made all court appearances.

### C. Effect of the Rebuttable Presumption

The Government's hole card is the rebuttable presumption. The statute provides that <u>subject to rebuttal</u> by the defendant:

> it shall be presumed that no condition or combination of conditions will reasonably ensure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed …
> (B) an offense under section 924(c), 956(a), or 2332b of this title….

18 U.S.C. §3142(e)(3)(B) (Section 924 relates to crimes involving a firearm).

Once the rebuttable presumption arises, the Defendant has the burden *of production*, that is, the burden to come forward with some evidence to rebut the presumption. *See, U.S. v.* Jessup, 757 F.2d 378, 380-84 (1st Cir. 1985). The presumption does not shift the ultimate burden of *proof* regarding flight or danger. *Id.* That burden remains with the Government throughout. Furthermore, rebuttal evidence does not render the presumption a "bursting bubble." Matters giving rise to the presumption are still considered in the overall assessment of whether the defendant is a flight risk or a danger to the community. *Jessup*, at 383 (Congress intended to impose a "burden of production" presumption, but it did not intend to make that presumption a "bursting bubble.").

To rebut the presumption, Defendant need not show he is innocent of the crime(s) charged; rather, he can produce evidence related to any of or all the factors spotlighted in §3142(g). Here, with respect to the risk of flight,

6

Defendant established he is a lifelong resident of the Tulsa area, has strong family ties here, and that while on release pending his Tulsa County trials, he appeared every time he was required to. In the Court's estimation, this rebuts the presumption as to flight risk.

With respect to danger, the Defendant proffered that he has no history of violent acts – that the tragedy of August 2014 is "one isolated act" through Kepler's entire life. Kepler also challenges the Government's assertion that the weight of the evidence greatly favors detention. There is no record evidence that Kepler had a propensity for violence prior to the shooting in August 2014. Nor is there record evidence that while he was on release pending trial in Tulsa County, Kepler posed a threat of violence to any individual or the community at large. Finally, during the three years Kepler has been in custody, following his manslaughter conviction, he has had no misconduct write-ups in prison.

## III.
## DECISION

After reviewing all of the record evidence herein, the detention considerations set forth in §3142(g), the rebuttable presumption contained in §3142(e)(3)(B) and the rebuttal evidence pertaining thereto, I conclude that the presumption has been rebutted as to both flight and danger. I rely heavily on Kepler's conduct during the three years he was on release in Tulsa County and his behavior in the three years he has been in custody. I have also considered the Defendant's personal history and community support. I conclude that whatever risk there may be of flight or danger – and I think both risks are low – they can be adequately managed through appropriate conditions of release.

**ACCORDINGLY**, the Government's Motion for Pre-Trial Detention is **DENIED**. The effect of this Order is hereby **STAYED** until 2 p.m. Tuesday December 01, 2020, to allow for any appeal by the Government and to prepare reasonable conditions of release.

**IT IS SO ORDERED** this 25th day of November 2020.

_____
Paul J. Cleary
United States Magistrate Judge