**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-CR-00276-GKF |
| | ) | |
| SHANNON JAMES KEPLER, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This matter comes before the court on the Motion to Revoke Order of Release [Doc. 35] of plaintiff United States of America. For the reasons set forth below, the motion is denied.

### Background/Procedural History

On August 5, 2014, defendant Shannon J. Kepler shot and killed nineteen-year-old Jeremy Lake. Mr. Kepler asserts he shot Mr. Lake in self-defense. During the incident, Mr. Kepler also fired shots in the general direction of M.H., a minor and Mr. Lake's half-brother, and Lisa Kepler, Mr. Kepler's daughter. M.H. sustained injury.

Mr. Kepler states that, immediately after the incident, he left the scene and contacted his wife, Gina Kepler.[1] In the late hours of August 5 or early hours of August 6, Mr. Kepler with his then-attorney turned himself in to the Tulsa Police Department.

On August 18, 2014, Mr. Kepler was charged in state court with one count of murder in the first degree in violation of Okla. Stat. tit. 21, § 701.7 and two counts of shooting with intent to kill in violation of Okla. Stat. tit. 21, § 652, in case no. CF-2014-3952 in the District Court in and for Tulsa County, State of Oklahoma. Mr. Kepler was in custody for approximately seventeen

---

[1] On August 5, 2014, both Shannon and Gina Kepler were police officers employed by the Tulsa Police Department (TPD). However, at the time of the shooting, both were off-duty.

(17) days following his self-surrender until he was released on bond.

Mr. Kepler was tried four times in state court. In the first trial, in November 2016, the jury convicted Mr. Kepler of two counts of reckless conduct with a firearm, but declared itself hung with respect to the murder charge. The second trial, which occurred in February 2017, resulted in a hung jury as to murder in the first degree. The third trial, which occurred in June and July 2017, also resulted in a hung jury as to the murder count. In October of 2017, the fourth jury convicted Mr. Kepler of the lesser-included offense manslaughter in the first degree – heat of passion and sentenced him to fifteen years imprisonment.

With the exception of a short detention following the reckless conduct with a firearm convictions in the first trial, Mr. Kepler was released throughout the state court proceedings. Following his manslaughter conviction, however, Mr. Kepler was remanded to the state's custody and has been incarcerated since October 2017. Because Mr. Kepler is a former police officer, for his protection, the Oklahoma Department of Corrections (ODOC) has held him in solitary confinement.

Mr. Kepler appealed his convictions to the Oklahoma Court of Criminal Appeals. While his appeal was pending, on July 9, 2020, the U.S. Supreme Court issued its decision in *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020), which held that the Muscogee (Creek) reservation had not been disestablished for purposes of federal criminal law. Thus, parts of Tulsa County remain "Indian Country" for purposes of the federal Major Crimes Act, 18 U.S.C. § 1153, which grants exclusive jurisdiction to the federal government over crimes, including murder, committed by an Indian in Indian Country.

Based on *McGirt,* Mr. Kepler asserted that the state court lacked jurisdiction over his case pursuant to § 1153. On August 19, 2020, the Oklahoma Court of Criminal Appeals remanded Mr.

Kepler's case to Tulsa County District Court for an evidentiary hearing as to Mr. Kepler's status as an Indian and whether the crime occurred within the boundaries of the Muscogee (Creek) Reservation.  On November 16, 2020, Tulsa County District Judge Tracy L. Priddy submitted her Amended Findings of Fact and Conclusions of Law to the Oklahoma Court of Criminal Appeals. Therein, Judge Priddy concluded that, on the date of the incident, Mr. Kepler was an Indian and that the crime occurred within the boundaries of the Muscogee (Creek) Nation.

Anticipating Mr. Kepler's state court conviction being vacated, on November 5, 2020, a federal grand jury issued an Indictment against Mr. Kepler, charging him with the following offenses:  (1) first degree murder in Indian Country pursuant to 18 U.S.C. §§ 1151, 1153, and 1111; (2) causing death by using and discharging a firearm during and in relation to crimes of violence pursuant to 18 U.S.C. § 924(j); and (3) assault with a dangerous weapon in Indian Country, 18 U.S.C. §§ 1151, 1153, and 113(a)(3).[2]  [Doc. 2].  On November 17, 2020, Mr. Kepler made his initial appearance in federal court [Doc. 15], and, on November 23, 2020, Mr. Kepler pled not guilty to the federal charges.  [Doc. 28].

The federal government moved to detain Mr. Kepler pending trial.  [Doc. 12].  On November 23, 2020, a detention hearing was held before Magistrate Judge Paul Cleary.  [Doc. 31]. On November 25, 2020, United States Magistrate Judge Cleary denied the government's motion and ordered that Mr. Kepler be released on conditions pending trial.  [Doc. 32, pp. 7-8].  Magistrate Judge Cleary stayed the effect of his order until 2:00 p.m. on Tuesday, December 1, 2020 to allow for any appeal by the government and to prepare reasonable conditions of release.  [*Id.* at p. 8].

On December 1, 2020, the government moved for revocation of the release order pursuant

---

[2] Until such time as the Oklahoma Court of Criminal Appeals acts upon Judge Priddy's Findings of Fact, the court has and will presume that Mr. Kepler was an Indian on the date of the crime, consistent with Judge Priddy's findings.

to 18 U.S.C. § 3145(a).  [Doc. 35].  In conjunction therewith, the government also sought a stay of Magistrate Judge Cleary's release order pending this court's resolution of the government's motion for revocation, [Doc. 36], which this court granted.  [Doc. 37].  On December 2, 2020, Mr. Kepler responded to the motion for revocation.  [Doc. 38].  On December 9, 2020, the government filed a reply.  [Doc. 41].

### Applicable Standard and Evidence Considered

Pursuant to 18 U.S.C. § 3145(a), "[i]f a person is ordered released by a magistrate judge . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release."  18 U.S.C. § 3145(a)(1).  The court's review is *de novo*.  *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003).  "A district court has the discretion to hold an evidentiary hearing if it determines that additional evidence is necessary or it may rule on the written pleadings and evidence if the factual record is sufficient."  *United States v. Daughtry*, No. 19-CR-0161-CVE, 2019 WL 4731949, at *2 (N.D. Okla. Sept. 27, 2019) (citing *United States v. King*, 849 F.2d 485, 490-91 (11th Cir. 1988); *United States v. Williams*, 753 F.2d 329, 334 (4th Cir. 1985)).  The court listened to the audio recording of the November 23, 2020 detention hearing held before Magistrate Judge Cleary, and reviewed the exhibits offered by the parties related to that hearing, as well as the motions and other filings in this case.  Based on its review, the court has determined that a sufficient factual record exists and therefore an additional evidentiary hearing is unnecessary.  However, the court does consider new evidence offered by the government—specifically, the government's Exhibit 5, TPD Evidence Log.  *See Cisneros*, 328 F.3d at 617.

"Under the Bail Reform Act, a defendant may be detained pending trial only if a judicial officer finds 'that no condition or combination of conditions will reasonably assure the appearance

of the person as required and the safety of any other person and the community.'" *Cisneros,* 328

F.3d at 616 (quoting 18 U.S.C. § 3142(e)).  To determine whether there are conditions of release

that will reasonably assure defendant's appearance as required and the safety of any other person

and the community, the court must take into account the available information concerning the

following:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).  The government must prove risk of flight by a preponderance of the

evidence, and danger to any other person or the community by clear and convincing evidence.

*Cisneros,* 328 F.3d at 616.

    The government invokes the presumption of detention pursuant to 18 U.S.C. § 3142(e),

because Mr. Kepler is charged with a "crime of violence" pursuant to 18 U.S.C. § 924(c) and the

charged crimes involve the use of a firearm.[3]  18 U.S.C. § 3142(e)(3)(B); *see also United States v. Moonda,* No. 06-MJ-6049, 2006 WL 2225822, at *7 (N.D. Ohio Aug. 2, 2006) ("In its brief in favor of detention, the government argues that because the language of 18 U.S.C. §924(j) tracks the language of §924(c), the 'rebuttable presumption' contained in 18 U.S.C. § 3142 applies.  The Court agrees.").  As explained by the Tenth Circuit:

> Once the presumption is invoked, the burden of production shifts to the defendant. However, the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government.  The defendant's burden of production is not heavy, but some evidence must be produced.  Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain.

*United States v. Stricklin*, 932 F.2d 1353, 1354-55 (10th Cir. 1991) (citing *United States v. Cook,* 880 F.2d 1158, 1162 (10th Cir. 1989)).  The court must apply the § 3142(g) factors to determine whether defendant has rebutted the presumption.  *See United States v. Bustamante-Conchas*, 557 F. App'x 803, 805 (10th Cir. 2014).[4]  Further, "once the burden of production is met, the presumption does not disappear, but rather remains as a factor for consideration in the ultimate release or detention determination."  *Cook,* 880 F.2d at 1162.

### Jurisdiction

Prior to addressing the § 3142(g) factors, the court first addresses the government's assertion that Mr. Kepler cannot be released until his state conviction is vacated.  [Doc. 35, pp. 9-10].  Mr. Kepler agrees that he should remain in custody until that conviction is vacated.  [Doc. 38, p. 3].  The court concurs and therefore concludes that any order of release must be stayed until

---

[3] For purposes of pretrial detention, "crime of violence" is defined as "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 3156(a)(4)(A).

[4] "Unpublished decisions are not precedential, but may be cited for their persuasive value."  10th Cir. R. 32.1(A).

such time that the Oklahoma Court of Criminal Appeals vacates the state conviction.  Absent the Court of Criminal Appeals adopting Judge Priddy's findings and vacating the state conviction, this court lacks jurisdiction to order defendant's release.

## Analysis

Turning to § 3142, the court applies the presumption in favor of detention based on its finding that probable cause exists that Mr. Kepler committed an enumerated offense.  18 U.S.C. § 3142(e)(3)(B).  The court next considers the § 3142(g) factors to determine whether Mr. Kepler has produced sufficient evidence to rebut the presumption.

### A.   *Nature and Circumstances of Crime Charged*

Looking to the first factor—the nature and circumstances of the crime charged—Mr. Kepler is charged with first degree murder in Indian Country, assault, and a firearms offense.  Mr. Kepler is therefore charged with a crime of violence.  Further, as previously stated, based on the nature of the charges against Mr. Kepler, the court presumes that no condition or combination of conditions will reasonably assure the safety of the community or Mr. Kepler's appearance as required.  Thus, this first factor favors detention.

### B.   *Weight of the Evidence*

The government relies heavily on the second factor—the weight of the evidence.  In this regard, it is undisputed that Mr. Kepler shot and killed Mr. Lake.  Further, defendant does not dispute evidence that, in shooting Mr. Lake, Mr. Kepler fired shots in the general direction of Mr. Lake's half-brother, M.H.  As recognized by the parties and Magistrate Judge Cleary, the heart of this matter lies in why—not whether—Mr. Kepler fired the shots.

In that regard, the government submits evidence intended to demonstrate premeditation. Specifically, the government points to Mr. Kepler's testimony that, on the date of the crime, Mr.

Kepler accessed Lisa Kepler's Facebook page and saw that she was in a relationship with Jeremy Lake. [Ex. 4, p. 1677]. Mr. Kepler then utilized his TPD log-in to obtain an arrest and booking data sheet for Mr. Lake, on the back of which he wrote Mr. Lake's last known address—202 N. Maybelle Avenue. [*Id.* at pp. 1677-79, 1749-50]. Mr. Kepler then drove home and changed clothes. [*Id.* at pp. 1747-48]. Thereafter, Mr. Kepler went to the Keplers' 2005 Chevy Suburban and removed a .357 Magnum revolver from its location in a zipped and locked bag under the driver's seat. [*Id.* at pp. 1687-88]. Mr. Kepler put the revolver in his belt and then drove the Suburban to 202 N. Maybelle Avenue and parked. [*Id.* at p. 1688-91, 1754-55]. Although accounts vary as to what happened next, there is no dispute that Mr. Kepler fired shots from the revolver, resulting in Mr. Lake's death. M.H. testified that he never knew Mr. Lake to have a handgun, other than a BB gun which he did not carry. [Ex. 3, p. 16].

To the extent that the government relies on Mr. Kepler's state court convictions, it appears that the state court lacked jurisdiction over Mr. Kepler. Until Mr. Kepler is tried by a court having jurisdiction, he is entitled to a presumption of innocence. *See Nelson v. Colorado*, 137 S. Ct. 1249, 1255-56 (2017); *Johnson v. Mississippi,* 486 U.S. 578, 585 (1988); *see also Coffin v. United States*, 156 U.S. 432, 453 (1895) ("The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law.").

To rebut this evidence, Mr. Kepler relies on his own testimony that he was acting in self-defense. During his fourth trial, Mr. Kepler testified that he had gotten out of his Suburban and was walking to follow Lisa Kepler when Mr. Lake got between Mr. Kepler and Lisa. Mr. Kepler testified that he was watching Mr. Lake's hands and that Mr. Lake dropped his hand to his pants and started to pull out a chrome-slide semiautomatic gun. [Ex. 4, 1698-1700, 1762-63]. At that

point, Mr. Kepler reacted and shot twice in Mr. Lake's direction.  [Ex. 4, 1700-01, 1767].  Mr. Kepler testified that, after firing the two shots, he began to back up but that Mr. Lake continued to advance toward him.  Because Mr. Kepler asserts Mr. Lake kept coming toward him, Mr. Kepler fired an additional two or three shots until Mr. Lake fell to the ground.  [Ex. 4, 1701-02, 1769-71].

Based on the record before the court, even viewing the evidence in the light most favorable to Mr. Kepler, the second factor is balanced between the government and defendant.

C.      *Defendant's History and Characteristics*

The court affords significant weight to third factor—Mr. Kepler's history and characteristics.  *First,* Mr. Kepler presents significant evidence of strong familial and community ties.  Mr. Kepler was born in Owasso, Oklahoma and has resided in the Tulsa area for almost all of his life.[5]  Prior to his arrest, he served as a TPD officer for twenty-four (24) years.  He has been married to Gina Kepler, who as previously stated is also a TPD officer, for twenty-eight years and they have three daughters, at least two of whom still reside in the Tulsa area.  Gina Kepler (and Mr. Kepler prior to his incarceration) resides next door to her mother.  Although Mr. Kepler is no longer employed as a TPD officer, he proffers evidence that, if released, he has an offer of employment with a local insurance agency.

*Second*, the court gives great weight to Mr. Kepler's past conduct, history, and record concerning appearance at court proceedings.  Prior to the August 5, 2014 incident, Mr. Kepler had no history of violent criminal behavior.  Gina Kepler testified that, during his twenty-four year career as a police officer, Mr. Kepler never had a complaint filed against him.  The ODOC reports no misconducts while Mr. Kepler has been in custody.  Mr. Kepler has no history of drug or alcohol

---

[5] Mr. Kepler attended college in Arkansas for three years but is otherwise a lifelong Oklahoma resident.

abuse.[6]  Finally, and of great significance to this court, defendant offers evidence that he appeared **no less than 60 times** in the Tulsa County District Court while released on bond pending trial on the state court charges.  In fact, Mr. Kepler continued to appear for a second, third, and fourth trial, even after being convicted of two counts of reckless conduct with a firearm.

The government urges the court to disregard Mr. Kepler's close familial ties with Lisa Kepler and Gina Kepler because they were "directly involved with the charged offenses." However, regardless of her role on the night the crime occurred, Gina Kepler testified she would assist Mr. Kepler in making his court appearances, meeting with his attorney, and complying with conditions imposed by the court if Mr. Kepler were released in this matter.  Further, the court notes that Ms. Kepler is not charged in this case.  As for Lisa Kepler, while it is clear that the father-daughter relationship has been tumultuous and set in motion the events of August 5, 2014, Lisa Kepler testified to recent changes in her life which suggest that similar circumstances are unlikely to arise.  Moreover, Lisa Kepler testified on Mr. Kepler's behalf during the November 23 detention hearing.

Nor is the court persuaded by the government's argument that, based on his history and characteristics, *Mr. Kepler* will be safest if he remains in custody.  The government contends that, because Mr. Kepler's time in prison has caused him physical, mental, and emotional anguish, he is safest in custody "where he is closely monitored and has access to mental health professionals." [Doc. 35, p. 13].  However, Gina Kepler testified that she has already contacted Mr. Kepler's primary care physician and a counselor and that she will assist Mr. Kepler in attending any necessary appointments or counseling sessions if he is released.  Thus, Mr. Kepler will also have

---

[6] The court notes one arrest for driving under the influence in the 1980s.  However, a single incident that occurred over thirty years ago is not suggestive of ongoing alcohol abuse.

access to mental health resources if released.

The government also points out that, if released, Mr. Kepler will have access to firearms and ammunition.  The government argues that this access, coupled with "his current mental health issues," show that Mr. Kepler is safest if he remains in custody.  The government's argument in this regard also fails.  Although Gina Kepler testified that Mr. Kepler's time in prison had affected him "a great deal," both physically and emotionally, there is no record evidence that Mr. Kepler may pose a threat to himself.  Further, as previously stated, Gina Kepler has contacted counselors on Mr. Kepler's behalf and Mr. Kepler's access to firearms shall be prohibited through conditions of release.

*Finally,* with respect to whether Mr. Kepler presents a "flight risk," it is significant to this court that Gina Kepler testified that Mr. Kepler does not own a passport and, further, the Keplers' finances are such that Mr. Kepler qualified for a court-appointed attorney.  It is true that the prospect of life imprisonment "provides Defendant with a great incentive to flee."  *United States v. Nichols*, 897 F. Supp. 542, 547 (W.D. Okla. 1995).  However, based on Mr. Kepler's lack of passport and financial position, even if Mr. Kepler had the incentive to flee, the evidence suggests that he would encounter substantial obstacles to do so.  Moreover, Mr. Kepler's alleged awareness of the likelihood of conviction—and therefore life imprisonment—is somewhat mitigated.  The Indictment charges Mr. Kepler with First Degree Murder in Indian Country.  Despite having faced first-degree murder charges in four separate state trials, Mr. Kepler has never been convicted of premeditated murder.

For all of these reasons, the third factor weighs against detention.

D.      *Nature and Seriousness of the Danger to the Community*

Finally, the court considers the nature and seriousness of the danger to any person or the

community that would be posed by Mr. Kepler's release.  As discussed above, "[Mr. Kepler] is presumed to be a danger to the community because of the nature of his charges." *United States v. Muhtorov*, 702 F. App'x 694, 701 (10th Cir. 2017).  "This presumption is rebuttable, but it remains in the case as a factor militating against release, to be weighed along with evidence related to the § 3142(g) factors." *Id.*

Defendant presents evidence to rebut the presumption that he poses a danger to the community.  As discussed above, Mr. Kepler offers evidence that, prior to the August 5, 2014 incident, Mr. Kepler had no history of violent criminal behavior.  It appears that Mr. Kepler never had a complaint filed against him as a TPD officer, and he has no misconducts while in state custody.[7]  It is also significant to the court that, as recognized by Magistrate Judge Cleary, there is no record evidence that Mr. Kepler posed a threat of violence to any individual or the community at large while on release pending trial in Tulsa County.  Further, although Gina Kepler possesses a firearm in conjunction with her employment as a TPD officer, Mr. Kepler's access to that firearm (as well as any other firearms in the home) shall be prohibited through the imposition of appropriate conditions.  Thus, the presumption having been rebutted, this factor does not weigh in favor of detention.

## Conclusion

This is undoubtedly a tragic case and nothing herein is intended to diminish Mr. Lake's untimely death.  However, at this stage, this court must determine only whether there exists any condition or combination of conditions that that will reasonably assure Mr. Kepler's appearance as required and the safety of the community.  Based on its independent, *de novo* review of the

---

[7] Any suggestion by the government that Mr. Kepler would have committed violent acts while incarcerated had he not been kept in solitary confinement is entirely speculative and not persuasive. *See* [Doc. 35, p. 14].

record, the court concurs with Magistrate Judge Cleary's findings and concludes that there are. Defendant Shannon Kepler has rebutted the presumption in favor of detention, and the government has failed to satisfy its burden to prove risk of flight or danger to persons or the community.  Thus, the government's motion to revoke order of release is denied.

WHEREFORE, the Motion to Revoke Order of Release [Doc. 35] of plaintiff United States of America is denied.  Defendant Shannon Kepler shall appear before the Magistrate Judge on Thursday, December 10, 2020, at 2:00 p.m. to set conditions of release.  The effect of the Order is stayed pending the latter of the Oklahoma Court of Criminal Appeals vacating the state court conviction against defendant Shannon Kepler or December 10, 2020 at 2:00 p.m.

IT IS SO ORDERED this 9th day of December, 2020.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE