## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-CR-00276-GKF |
| | ) | |
| SHANNON JAMES KEPLER, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>OPINION AND ORDER</u>

This matter comes before the court on the Motion for Judgment of Acquittal Pursuant to Federal Rule of Civil Procedure 29(c)(1) [Doc. 112] of defendant Shannon James Kepler. For the reasons set forth below, the motion is granted as to Count Three, but denied as to Count Two.

### Background/Procedural History

On August 5, 2014, defendant Shannon J. Kepler fired multiple shots in a residential neighborhood, resulting in the shooting and killing of Jeremey Lake. Mr. Kepler asserts that he shot Mr. Lake in self-defense. During the incident, Mr. Kepler also fired shots in the direction of Michael Hamilton, a 13-year-old minor and Mr. Lake's half-brother, and Lisa Kepler, Mr. Kepler's daughter.

Mr. Kepler was charged with one count of murder in the first degree in violation of Okla. Stat. tit. 21, § 701.7 and two counts of shooting with intent to kill in violation of Okla. Stat. tit. 21, § 652, in case no. CF-2014-3952 in the District Court in and for Tulsa County, State of Oklahoma.

Mr. Kepler was tried four times in state court. In the first trial, in November 2016, the jury convicted Mr. Kepler of two counts of reckless conduct with a firearm, but declared itself hung with respect to the murder charge. The second trial, which occurred in February 2017, resulted in a hung jury as to murder in the first degree. The third trial, which occurred in June and July 2017,

also resulted in a hung jury as to the murder count.  In October of 2017, the fourth jury convicted Mr. Kepler of the lesser-included offense of manslaughter in the first degree – heat of passion and sentenced him to fifteen years imprisonment.

Mr. Kepler appealed his convictions to the Oklahoma Court of Criminal Appeals.  While the appeal of the manslaughter conviction was pending, on July 9, 2020, the U.S. Supreme Court issued its decision in *McGirt v. Oklahoma*, — U.S. —, 140 S. Ct. 2452 (2020), which held that the Muscogee (Creek) reservation had not been disestablished for purposes of federal criminal law. Thus, parts of Tulsa County remain "Indian Country" as defined by the federal Major Crimes Act, 18 U.S.C. § 1153, which grants exclusive jurisdiction to the federal government over crimes, including murder, committed by an Indian in Indian Country.  In the appeal of the manslaughter conviction, on March 18, 2021, the Oklahoma Court of Criminal Appeals ultimately concluded that the State of Oklahoma lacked jurisdiction to prosecute Mr. Kepler, who is an Indian.

Anticipating Mr. Kepler's state court conviction being vacated, on November 5, 2020, the United States Attorney sought and obtained an indictment from a federal grand jury.  The indictment charges Mr. Kepler with the following offenses:  (1) first degree murder in Indian Country pursuant to 18 U.S.C. §§ 1151, 1153, and 1111; (2) causing death by using and discharging a firearm during and in relation to crimes of violence pursuant to 18 U.S.C. § 924(j); and (3) assault with a dangerous weapon in Indian Country, 18 U.S.C. §§ 1151, 1153, and 113(a)(3).  [Doc. 2].

Mr. Kepler filed a motion seeking to dismiss the indictment in its entirety.  [Doc. 52].  With respect to Count Two, Mr. Kepler argued:  (1) the indictment was duplicitous as it charged two separate offenses, and (2) the applicable statute of limitations had run to the extent the charge was premised on second-degree murder.  Mr. Kepler challenged Count Three based on the relevant

statute of limitations, and raised the additional argument that prosecution for the offense violated the Double Jeopardy Clause. The court denied the motion in a January 7, 2021 Opinion and Order. [Doc. 60]. Therein, the court stated that the denial was without prejudice to the reassertion of more thorough argument regarding the applicable statute of limitations to Count Three. [*Id.* at 9].

On April 26, 2021, a jury found Mr. Kepler not guilty as to Count One of the Indictment. However, the jury found Mr. Kepler guilty of Count Two, finding that Mr. Kepler caused the death of another in Indian Country through the use and discharge of a firearm during and in relation to the commission of second-degree murder. The jury also found Mr. Kepler guilty on Count Three. [Doc. 111]. Mr. Kepler is currently scheduled to be sentenced on December 2, 2021 at 9:30 a.m. [Doc. 177].

On May 10, 2021, Mr. Kepler filed a Motion for Judgment of Acquittal Pursuant to Rule 29(c)(1) as to both Count Two and Count Three. [Doc. 112]. Mr. Kepler raises three arguments related to Count Three: (1) the court lacked jurisdiction as to Count Three because the State of Oklahoma has not set aside Mr. Kepler's state-court conviction for assault; (2) the applicable statute of limitations has run; and (3) the evidence of intent was insufficient to support the conviction, particularly in light of the court's instruction to the jury as to transferred intent. [Doc. 112, pp. 3-5]. With respect to Count Two, Mr. Kepler initially argued that the applicable statute of limitations had lapsed. [Doc. 112, pp. 5-6]. On May 14, 2021, Mr. Kepler filed a supplement to his motion raising the additional argument that second-degree murder is not a crime of violence. [Doc. 124].

**Count Three Analysis**

As previously stated, Mr. Kepler challenges his Count Three conviction on three grounds: (1) lack of jurisdiction; (2) statute of limitations; and (3) insufficient evidence of intent. [Doc.

112, pp. 3-5].  The court first considers Mr. Kepler's jurisdictional challenge.

A.      *Lack of Jurisdiction*

Mr. Kepler asserts that, because his state-court reckless conduct with a firearm convictions have not been vacated, this court lacked jurisdiction.  As discussed in this court's January 7, 2021 Opinion and Order, the Fifth Amendment's Double Jeopardy Clause provides that "no person shall . . . be subject for the *same offence* to be twice put in jeopardy of life or limb."  U.S. Const. amend. V (emphasis added).  "As originally understood . . . an 'offence' is defined by a law, and each law is defined by a sovereign.  So where there are two sovereigns, there are two laws, and two 'offences.'"  *Gamble v. United States*, — U.S. —, 139 S. Ct. 1960, 1965 (2019).  Thus, "a defendant may be indicted, prosecuted, and convicted in federal court for illegal conduct punishable under a federal statute even after a state court has convicted defendant under a state statute for the same conduct" without implicating Double Jeopardy concerns.  *United States v. Andersen*, 940 F.2d 593, 596 (10th Cir. 1991) (citing *Abbate v. United States*, 359 U.S. 187 (1959)); *see also Gamble,* 139 S. Ct. at 1964 ("Under this 'dual-sovereignty' doctrine, a State may prosecute a defendant under state law even if the Federal Government has prosecuted him for the same conduct under a federal statute. . . .  Or the reverse may happen.").  Pursuant to the dual sovereignty doctrine, that Mr. Kepler was previously charged, prosecuted, and convicted in Oklahoma state court for the offense of reckless conduct with a firearm arising from the same incident does not deprive the court of jurisdiction.  That is, Mr. Kepler may be federally prosecuted and punished for the same conduct, and a judgment of acquittal is not warranted on this basis.

B.      *Statute of Limitations*

Mr. Kepler also seeks a judgment of acquittal as to Count Three because the applicable statute of limitations has expired.  The government asserts that the statute of limitations for

offenses against children found in 18 U.S.C. § 3283 applies.[1]  Mr. Kepler opposes application of § 3283 and has previously argued that the five-year statute of limitations provided in § 3282 applies.  *See* [Doc. 52, p. 6].

Pursuant to 18 U.S.C. § 3283, "[n]o statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse, or kidnaping, of a child under the age of 18 years shall preclude such prosecution during the life of the child, or for ten years after the offense, whichever is longer."  Prior to 1990, the general five-year statute of limitations applicable to non-capital offenses applied to child physical and sexual abuse.  *See* 18 U.S.C. § 3282.  However, "[i]n 1990, Congress enacted the Victims of Child Abuse Act, which included a specific statute of limitations for child abuse offenses . . . .  *See* 18 U.S.C. § 3509(k).  In 1994, section 3509(k) was recodified without change as 18 U.S.C. § 3283."  *United States v. Nader*, 425 F. Supp. 3d 619, 623 (E.D. Va. 2019) (internal footnote omitted) (formatting altered from original).  As previously recognized by this court, one Circuit Court of Appeals stated that, in enacting § 3283, "Congress . . . evinced a general intention to 'cast a wide net to ensnare as many offenses

---

[1] Contrary to the government's assertion, the court did not previously rule that § 3283 applied.  *See* [Doc. 130, p. 6].  Rather, the court stated:

> The Indictment alleges that Mr. Kepler, with the intent to do bodily harm, assaulted M.H. by discharging a firearm.  The government has proffered evidence that, at the time, M.H. was a minor and sustained physical injury.  Under the circumstances, the court is inclined to conclude that the alleged violation of § 113(a)(3) constitutes an "offense involving . . . the physical abuse" of a child under the age of 18 years and the statute of limitations in § 3283 applies.  Thus, the motion to dismiss on this issue is denied at this time.  However, as previously stated, the issue is one of first impression and the parties presented little argument as to the applicable limitation period in their briefs.  Accordingly, the denial of the motion on this issue is without prejudice to its reassertion in more thorough briefing, particularly with respect to whether the crime constitutes "physical abuse."

[Doc. 60, p. 9 (internal footnote omitted)].

against children as possible.'"  *United States v. Schneider,* 801 F.3d 186, 196 (3d Cir. 2015)

(quoting *United States v. Dodge,* 597 F.3d 1347, 1355 (11th Cir. 2010)).  Regardless, however,

the court is bound by the maxim of statutory construction that "[w]hen the statute's language is

plain, the sole function of the courts—at least where the disposition required by the text is not

absurd—is to enforce it according to its terms."  *Dodd v. United States*, 545 U.S. 353, 359 (2005)

(quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A*., 530 U.S. 1, 6 (2000)).

As stated above, § 3283 applies to "an offense involving the sexual or physical abuse . . .

of a child under the age of 18 years."  Section 3283 does not define "sexual or physical abuse."

Where a statute does not define a term, the court must apply the "ordinary, everyday meaning."

*United States v. Wagner,* 951 F.3d 1232, 1256 (10th Cir. 2020) (quoting *United States v. Dobbs,*

629 F.3d 1199, 1203 (10th Cir. 2011)).  "In doing so, [the court] must also consider both the

specific context in which the word is used and the broader context of the statute as a whole."

*United States v. Theis,* 853 F.3d 1178, 1181 (10th Cir. 2017).

The ordinary, everyday meaning of "abuse" connotes physical injury as the result of

physical maltreatment.  Black's Law Dictionary, Abuse (11th ed. 2019); *see also* "Abuse, n."

*Oxford's English Dictionary Online* (June 2021), last accessed Sept. 1, 2021; *Merriam-Webster*

*Dictionary Online,* last accessed Sept. 1, 2021.  Looking to the context of the statute as a whole,

based on the section's legislative history, courts have previously construed § 3283 in light of the

definitions included 18 U.S.C. § 3509.  *See United States v. Diehl,* 775 F.3d 714, 720 (5th Cir.

2015); *United States v. Carpenter,* 680 F.3d 1101, 1103 (9th Cir. 2012); *United States v.*

*Coutentos*, 651 F.3d 809, 816-17 (8th Cir. 2011).  Section 3509 defines "physical injury" to include

"lacerations, fractured bones, burns, internal injuries, severe bruising or serious bodily harm."  18

U.S.C. § 3509(a)(4).  The plain meaning of "laceration" connotes a torn or ragged wound, usually

of some depth.  *Merriam-Webster Dictionary Online,* last accessed Sept. 1, 2021.  "Serious bodily harm" connotes "serious bodily injury," which is defined as "[s]erious physical impairment of the human body; esp., bodily injury that creates a substantial risk of death or that causes serious, permanent disfigurement or protracted loss or impairment of the function of any body part or organ."  "Serious Bodily Injury," *Black's Law Dictionary* (11th ed. 2019); *see also* 18 U.S.C. § 1365(h)(3); 18 U.S.C. § 113(b)(2); 18 U.S.C. § 2246(4).

As recognized by the court in its January 7, 2021 Opinion and Order, courts have declined to limit themselves to the elements of the charged offense, but instead consider the underlying facts to determine the applicability of § 3283.  *See Schneider,* 801 F.3d at 196-97; *United States v. Maxwell,* — F. Supp. 3d —, 2021 WL 1518675, at **6-7 (S.D.N.Y. Apr. 16, 2021); *see also Weingarten v. United States,* 865 F.3d 48, 60 (2d Cir. 2017) (recognizing "it would present no practical difficulty or unfairness to apply a fact-based approach to § 3283").  Looking to the facts of this case, Michael Hamilton testified that he was not struck by a bullet.  [Doc. 142, p. 229:18-20].  Hamilton testified that he did receive a "little nick" on his arm from concrete or debris on the porch.  [*Id.* at p. 229:21-23].  The nick "didn't bleed much" and did not require a Band-Aid.  [*Id.* at pp. 229:21-25, 240:6-10].

Applying the ordinary, everyday meaning of "physical abuse" in the context of § 3283 as a whole, as the court must, the "little nick" received by Mr. Hamilton does not qualify as abuse.  Mr. Hamilton's wound was not the result of physical maltreatment, nor was it of the serious nature required to constitute physical injury.  Rather, the testimony at trial suggests it was caused by a brick fragment broken and propelled by a ricochet bullet.  [Doc. 142, p. 239:11-24].  Thus, under the circumstances, the violation of § 113(a) did not constitute an "offense involving . . . the physical abuse" of a child, and § 3283 is inapplicable.  Instead, the five-year statute of limitations generally

applicable to non-capital crimes applies.  18 U.S.C. § 3282.  Because the crime occurred in 2014

but Mr. Kepler was not federally indicted until over six years later, the offense is time-barred.  Mr.

Kepler's motion for judgment of acquittal pursuant to Federal Rule of Civil Procedure 29 is granted

in this respect.[2]

## Count Two Analysis

As stated above, Mr. Kepler challenges his Count Two conviction on two separate grounds.

First, he reasserts his prior argument that the applicable statute of limitations has lapsed.  Second,

he argues that second-degree murder is not a "crime of violence" as required by 18 U.S.C. § 924(j).

The court separately considers each argument.

### A.    Statute of Limitations

First, with respect to the statute of limitations, the court previously rejected Mr. Kepler's

argument in its January 7, 2021 Opinion and Order.  [Doc. 60, pp. 7-8].  Significantly, Mr. Kepler

offers no authority in support of his argument that the five-year statute of limitations applies.

Rather, Mr. Kepler criticizes the court's prior reliance on *United States v. Melgar-Cabrera*, 892

F.3d 1053 (10th Cir. 2018), because the decision did not concern the applicable statute of

limitations.  Mr. Kepler is correct that the Tenth Circuit did not consider the applicable statute of

limitations in *Melgar-Cabrera.*  However, in that case, the court unambiguously concluded that §

924(j) constitutes a "discrete crime," rather than a sentencing enhancement, and recognized "a

defendant may receive the death penalty under section 924(j)."  *Id.* at 1060 (quoting *United States

v. Julian,* 633 F.3d 1250 (11th Cir. 2011)).  "An indictment for any offense punishable by death

may be found at any time without limitation."  18 U.S.C. § 3281.  Further, the district court in

---

[2] Because the court concludes that judgment of acquittal should be granted based on the applicable
statute of limitations, the court need not consider the sufficiency of the evidence of intent.

*Hargrove* considered this exact issue—the statute of limitations applicable to a § 924(j) offense—regardless of the procedural posture of the case. *See United States v. Hargrove*, Nos. 03-20192-CM, 12-2180-CM, 2013 WL 4787917, at *4 (D. Kan. Sept. 9, 2013), *appeal dismissed, United States v. Hargrove,* 558 F. App'x 807, 810 (10th Cir. 2014) (unpublished). As previously stated, the court finds the reasoning in that case persuasive.[3] [Doc. 60, pp. 7-8]; *see also United States v. Ledbetter,* No. 15-CR-80, 2015 WL 5117979, at **10-11 (S.D. Ohio Sept. 1, 2015). For all these reasons, the court declines to depart from its prior ruling in this case, and Mr. Kepler's motion for judgment of acquittal as to Count Two is denied in this regard.

  *B.*  *Crime of Violence*

  The court next turns to Mr. Kepler's argument that second-degree murder is not a "crime of violence."

    1. <u>Background</u>

  Mr. Kepler was convicted of a § 924(j) offense, which criminalizes causing the death of a person through use of a firearm while in the course of a violation of 18 U.S.C. § 924(c). Section 924(c) makes it a crime to use or discharge a firearm during and in relation to any "crime of violence" for which a person may be prosecuted in a court of the United States. The definition of "crime of violence" is found in 18 U.S.C. § 924(c)(3). The statutory definition contains both an "elements clause" and a "residual clause." The elements clause defines an offense as a crime of violence if it is a felony and "has as an element the use, attempted use, or threatened use of physical

---

[3] Mr. Kepler points out that, at the time of the *Hargrove* decision, the Tenth Circuit did not recognize a § 924(j) offense as a discrete crime, but rather characterized it as a sentencing enhancement. However, the same reasoning applies. *Hargrove*, 2013 WL 4787917, at *4 (citing cases for the principle that 924(j) offense is not barred, regardless of whether the statute of limitations has run on the underlying crime, even though the underlying crime constitues an element of a § 924(j) offense).

force against the person or property of another."  18 U.S.C. § 924(c)(3)(A).  The residual clause

defines an offense as a crime of violence if it, "by its nature, involves a substantial risk that physical

force against the person or property of another may be used in the course of committing the

offense." 18 U.S.C. § 924(c)(3)(B).  In *United States v. Davis*, the Supreme Court held the residual

clause, 18 U.S.C. § 924(c)(3)(B), to be unconstitutionally vague.  *United States v. Davis*, 139 S.

Ct. 2319, 2336 (2019).  Thus, the court considers only the elements clause.

Pursuant to the categorical approach, the court must "focus solely on whether the elements

of the crime of conviction sufficiently match the elements of [the generic crime], while ignoring

the particular facts of the case."[4] *Mathis v. United States*, — U.S. —, 136 S. Ct. 2243, 2248 (2016).

If the elements of the statute of conviction are the same as the generic offense, or are defined more

narrowly, then the conviction qualifies as a "crime of violence."  *See Descamps v. United State*s,

570, U.S. 254, 133 S. Ct. 2276, 2283 (2013).  However, if the elements of the statute of conviction

"sweep[] more broadly" than, or cover more conduct than, the generic criminal offense, then the

statute of conviction cannot serve as a "crime of violence."  *Id.*; *see also Mathis*, 136 S. Ct. at

2248.  "An offense does not qualify as a '[crime of violence]' unless the *least* serious conduct it

covers falls within the elements clause."[5] *Borden v. United States*, 141 S. Ct. 1817, 1832 (2021)

(Kagan, J., plurality concurrence) (emphasis in original).

---

[4] Neither Mr. Kepler nor the government argue that § 1111's definition of second-degree murder is divisible and therefore the modified categorical approach applies.  *See also United States v. Chanthadara,* 230 F.3d 1237, 1258 (10th Cir. 2000) ("[S]econd-degree murder requires the government to prove: (1) the unlawful killing of a human being, and (2) malice aforethought."); *Sarracino v. United States*, No. CV-16-734-MCA-CG, 2017 WL 3822741, at **5-6 (D.N.M. Aug. 30, 2017).

[5] The U.S. Supreme Court has recognized "[i]n interpreting [the definition of violent felony found in] § 16(a), 'we cannot forget that we ultimately are determining the meaning of the term 'crime of violence.'" *Borden v. United States*, 141 S. Ct. 1817, 1830 (2021) (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004)).

As previously stated, a jury found Mr. Kepler guilty of a violation of § 924(j) by use of a firearm in committing the underlying offense of second-degree murder.  [Doc. 111].  Murder in the second-degree requires the government to prove, beyond a reasonable doubt, the following: (1) the defendant caused the death of the victim named in the indictment; (2) **the defendant killed the victim with malice aforethought**; (3) the defendant is an Indian person; and (4) the killing took place in Indian Country.  10th Cir. Pattern Criminal Jury Instr. § 2.53 (emphasis added).  The "malice aforethought element is satisfied by:  (1) intent-to-kill without the added ingredients of premeditation and deliberation; (2) intent-to-do-serious-bodily-injury; (3) depraved-heart; or (4) commission of [certain felonies]."  *United States v. Wood,* 207 F.3d 1222, 1228 (10th Cir. 2000) (quoting *United States v. Pearson*, 159 F.3d 480, 486 (10th Cir. 1998)).  The Tenth Circuit "ha[s] also held that malice aforethought 'may be established by evidence of conduct which is reckless and wanton, and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm.'"  *Wood,* 207 F.3d at 1228 (quoting *United States v. Soundingsides*, 820 F.2d 1232, 1237 (10th Cir. 1987)).

In the motion, Mr. Kepler directed the court to a Ninth Circuit decision, *United States v. Begay,* 934 F.3d 1033 (9th Cir. 2019), in which that Circuit held that "[s]econd degree murder does not constitute a crime of violence under the elements clause—18 U.S.C. § 924(c)(3)(A)— because it can be committed recklessly."  *Id.* at 1038.  In response, on June 1, 2021, the government cited the Tenth Circuit's decision in *United States v. Pam*, 867 F.3d 1191 (10th Cir. 2017), in which the court concluded "a statute requiring proof only that the defendant acted willfully and with reckless disregard for the risk posed by that act to another person may categorically involve the use of physical force."  *Id.* at 1208.  Less than two weeks later, however, the U.S. Supreme

Court issued a plurality decision in *Borden v. United States*, 141 S. Ct. 1817, 210 L. Ed. 2d 63 (2021). There, five of the Justices concluded that criminal offenses with a *mens rea* of recklessness *do not* qualify as an offense entailing "use . . . of physical force against the person of another." This court then directed the parties to submit supplemental briefing regarding *Borden* as it relates to Mr. Kepler's argument that second-degree murder is not a "crime of violence." [Doc. 158]. Those briefs [Doc. 168; Doc. 169] have now been filed, and this court must determine whether second-degree murder qualifies as a "crime of violence" under the elements clause of § 924(c)(3)(A) in the wake of *Borden*—an issue of first impression in this Circuit.

2.   Summary of <em>Borden v. United States</em>, 141 S. Ct. 1817 (2021)

In *Borden*, the Court considered an issue left open by prior decisions—whether a crime that "requires only a *mens rea* of recklessness" can qualify as an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another."[6] *Id.* at 1821-22. Justice Kagan, in an opinion joined by Justices Breyer, Sotomayor, and Gorsuch, concluded that crimes with a *mens rea* of recklessness are not offenses requiring the "use of physical force against the person of another," because "[t]hey do not require . . . the active employment of force against another person" as demanded by the phrase "against the person of another" when modifying "use of force." *Id.* at 1825, 1834. However, at the outset, it is important to recognize that Justice Kagan explicitly reserved the issue of whether offenses with mental states

---

[6] In *Leocal v. Ashcroft*, the Court held that an offense having an element of the use of physical force against the person of another "requir[es] a higher *mens rea* than . . . merely accidental or negligent conduct."  543 U.S. at 10.  However, the Court reserved the issue of "whether a state or federal offense that requires proof of the reckless use of force against a person or property of another qualifies as a crime of violence."  *Id.* at 13.  Similarly, in *Voisine v. United States*, the Court held that the language of § 921(a)(33)(A) "encompasses acts of force undertaken recklessly," but noted the decision "d[id] not resolve whether § 16 includes reckless behavior." 136 S. Ct. 2272, 2280 n.4 (2016).

between recklessness and knowledge—"often called 'depraved heart' or 'extreme recklessness'"—fall within the elements clause. *Borden,* 141 S. Ct. at 1825 n.4. Thus, Justice Kagan's plurality opinion was limited to what this court will refer to as "ordinary recklessness"— a "less culpable mental state" than purpose or knowledge. *Id.* at 1824.

Justice Kagan first considered the "four states of mind, as described in modern statutes and cases, that may give rise to criminal liability," which are, "in descending order of culpability: purpose, knowledge, recklessness, and negligence." *Id.* at 1823. The court need not consider purposeful or negligent conduct to determine the issue presented and therefore analyzes only knowledge and recklessness.

A person "acts knowingly when 'he is aware that [a] result is practically certain to follow from his conduct,' whatever his affirmative desire." *Id.* (quoting *United States v. Bailey,* 444 U.S. 394, 404 (1980)). That is, when the actor "makes a deliberate choice with full awareness of consequent harm." *Id.* A person acts recklessly, on the other hand, "when he 'consciously disregards a substantial and unjustifiable risk' attached to his conduct, in 'gross deviation' from accepted standards." *Id.* at 1824 (quoting MODEL PENAL CODE § 2.02(c)). However, "[t]hat risk need not come anywhere close to a likelihood." *Id.*

Looking to the definition of "violent felony" (and therefore "crime of violence")—"an offense requiring the 'use of physical force against the person of another'"—Justice Kagan reasoned "[t]he phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual. Reckless conduct is not aimed in that prescribed manner." *Id.* at 1825; *see also id.* at 1826 ("The critical context here is the language that 'against another' modifies—the 'use of physical force.' As just explained, 'use of force' denotes volitional conduct."). Justice Kagan offered the example of a reckless driver who hits a

pedestrian he did not see, explaining

> the reckless driver has not directed force at another:  He has not trained his car at the pedestrian understanding he will run him over.  To the contrary, his fault is to pay insufficient attention to the potential application of force.  Because that is so— because his conduct is not opposed to or directed at another—he does not come within the elements clause.  He has not used force "against" another person in the targeted way that clause requires.

*Id.* at 1827 (internal citation omitted).  Thus, because offenses with a *mens rea* of recklessness do not require "the active employment of force against another person," they do not qualify as "crimes of violence." *Id.* at 1834.

Justice Thomas, in a separate opinion, concurred in the conclusion that reckless *mens rea* offenses do not fall within the elements clause definition of "crime of violence," but focused on the phrase "use of physical force," rather than "against the person of another."[7] *Id.* at 1835. "Use of physical force" he reasoned "has a well-understood meaning applying only to intentional acts designed to cause harm.'" *Id.* (quoting *Voisine*, 136 S. Ct. at  2279, 2290).  In so concluding, Justice Thomas referred to his previous dissent in *Voisine*. *Id.*  Thus, it is necessary to look to that dissent.

There, Justice Thomas, who was joined by Justice Sotomayor, reasoned, "a 'use' . . . is an inherently intentional act—that is, an act done for the purpose of causing certain consequences or at least with knowledge that those consequences will ensue." *Voisine*, 136 S. Ct. at 2283. Applying this principle, Justice Thomas provided the following illustration:

> To illustrate where I part ways with the majority, consider different mental states with which a person could create and apply force.  First, a person can create force intentionally or recklessly.  For example, a person can intentionally throw a punch or a person can crash his car by driving recklessly.  Second, a person can intentionally or recklessly harm a particular person or object as a result of that force.  For example, a person could throw a punch at a particular person (thereby

---

[7] Chief Justice Roberts, Justice Kavanaugh, Justice Alito, and Justice Barrett dissented in an opinion authored by Justice Kavanaugh. *Id.* at 1837.

intentionally applying force to that person) or a person could swing a baseball bat too close to someone (thereby recklessly applying force to that person).

> These different mental states give rise to three relevant categories of conduct. A person might intentionally create force and intentionally apply that force against an object (*e.g.,* punching a punching bag). A person might also intentionally create force but recklessly apply that force against an object (*e.g.,* practicing a kick in the air, but recklessly hitting a piece of furniture). Or a person could recklessly create force that results in damage, such as the car crash example.
>
> The question before us is what mental state suffices for a "use of physical force" against a family member. In my view, a "use of physical force" most naturally refers to cases where a person intentionally creates force and intentionally applies that force against a family member. It also includes (at least some) cases where a person intentionally creates force but recklessly applies it to a family member. But I part ways with the majority's conclusion that purely reckless conduct—meaning, where a person recklessly creates force—constitutes a "use of physical force."

*Id.* at 2284-85 (internal footnote omitted).

With respect to the nature of an intentional "use" of physical force, Justice Thomas stated that "the law will impute that intent where the actor knows with a practical certainty that it will cause harm." *Id.* at 2287. He further explained:

> [T]he requirement of a "practical" certainty reflects that, in ordinary life, people rarely have perfect certitude of the facts that they "know." But as the probability decreases, "the actor's conduct loses the character of intent, and becomes mere recklessness." Restatement (Second) of Torts § 8A, Comment *b*, at 15. And the distinction between intentional and reckless conduct is key for defining "use." When a person acts with a practical certainty that he will employ force, he intends to cause harm; he has actively employed force for an instrumental purpose, and that is why we can fairly say he "uses" force. In the case of reckless wrongdoing, however, the injury the actor has caused is just an accidental byproduct of inappropriately risky behavior; he has not actively employed force.

*Id.* at 2288-89. Accordingly, Justice Thomas concluded "[t]he 'use of physical force' does not include crimes involving purely reckless conduct," *id.* at 2292, a conclusion incorporated into his *Borden* concurrence.

3.     Analysis

As set forth above, five of the nine Justices concurred in the judgment, but applied disparate rationales.  "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'"  *Marks v. United States*, 430 U.S. 188, 193 (1977) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976) (opinion of Stewart, Powell, and Stevens, JJ.)).  The Tenth Circuit has explained application of the *Marks* rule as follows:

> In practice, however, the *Marks* rule produces a determinative holding only when one opinion is a logical subset of other, broader opinions.  Thus, for example, one inquiry under *Marks* might be whether the concurrence posits a narrow test to which the plurality must necessarily agree as a logical consequence of its own, broader position.  When, however, one opinion supporting the judgment does not fit entirely within a broader circle drawn by the others, *Marks* is problematic.  We do not apply *Marks* when the various opinions supporting the Court's decision are mutually exclusive.

*Large v. Fremont Cnty.,* 670 F.3d 1133, 1141 (10th Cir. 2012) (internal citations and quotations omitted).  In *Borden*, Justice Thomas opined in his concurrence that the phrase "use of physical force" alone requires "intentional acts designed to cause harm" and therefore "does not encompass" offenses with a  *mens rea* of recklessness.  *Borden,* 141 S. Ct. at 1835; *see also Voisine,* 136 S. Ct. at 2283.  Thus, Justice Thomas "must necessarily agree" that "use of physical force," when modified by "against the person of another," excludes recklessness as reasoned by Justice Kagan.  *Large,* 670 F.3d at 1141.  Accordingly, the more narrow opinion authored by Justice Kagan is "a logical subset" of the broader opinion expressed by Justice Thomas, and the *Marks* rule applies.  The plurality opinion authored by Justice Kagan may therefore be construed

as the determinative holding of the Court in *Borden*.[8]

Applying Justice Kagan's reasoning, the court concludes that second-degree murder pursuant to § 1111 constitutes a "crime of violence" as defined by § 924(c). As previously stated, Justice Kagan emphasized that "'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual." *Borden,* 141 S. Ct. at 1825. If the conduct is not so directed, it cannot come within the elements clause. *Id.*

As previously stated, second-degree murder requires malice aforethought, which may be satisfied by: "(1) intent-to-kill without the added ingredients of premeditation and deliberation; (2) intent-to-do-serious-bodily-injury; (3) depraved-heart; or (4) commission of [certain felonies]." *Wood,* 207 F.3d at 1228. This matter concerns two of those categories—"depraved-heart" and commission of certain felonies.[9]

### a. Depraved-Heart

In the context of second-degree murder, "[t]he concepts of 'depraved heart' and 'reckless and wanton, and a gross deviation from a reasonable standard of care' are functionally equivalent." *Wood*, 207 F.3d at 1228. Significantly, the elements of manslaughter also refer to "reckless and wanton" behavior. *Id.* "The substantive distinction is the severity of the reckless and wanton

---

[8] However, as will be discussed below, regardless of whether the court applies Justice Kagan's or Justice Thomas's opinion, the same conclusion would result. And, in a dissent authored by Justice Kavanaugh, the four remaining Justices made their opinion on the issue clear: "In my view, crimes committed with extreme recklessness, such as depraved-heart murder, should obviously still qualify as predicate offenses under [Armed Career Criminal Act], even after today's decision." *Id.* at 1856 n.21.

[9] Neither party contends that intent-to-kill without premeditation and deliberation or intent-to-do-serious-bodily-injury do not constitute "crimes of violence." Nor would such argument be successful. *See Borden,* 141 S. Ct. 1826 ("[T]he clause covers purposeful and knowing acts[.]") (Kagan, J. plurality concurrence); *id.* at 1835 (reasoning elements clause applies to "intentional acts designed to cause harm") (Thomas, J., concurring).

behavior:  Second-degree murder involves reckless and wanton disregard for human life *that is extreme in nature*, while involuntary manslaughter involves reckless and wanton disregard that is not extreme in nature."  *Id.* at 1229 (emphasis added); *see also* Commentary to MODEL PENAL CODE § 210.2, p. 21 (emphasis added) ("In a prosecution for murder, however, the Code calls for the further judgment whether the actor's conscious disregard of the risk, under the circumstances, manifests *extreme indifference to the value of human life*.").  A crime resulting in death that does not satisfy the heightened standard of extreme indifference to human life must be treated as manslaughter.  Commentary to MODEL PENAL CODE § 210.2, p. 2; MODEL PENAL CODE § 210.3(1)(a).  Accordingly, "what separates malice aforethought is the 'extreme indifference to the value of human life.'"  *United States v. Báez-Martínez*, 950 F.3d 119, 127 (1st Cir. 2020).

The Tenth Circuit has previously recognized that "reckless conduct," as it relates to depraved heart murder, "is considered a form of intentional conduct because it 'includes an element of deliberateness—a *conscious* acceptance of a known, serious risk.'"  *United States v. Serawop*, 410 F.3d 656, 663 n.4 (10th Cir. 2005) (emphasis in original) (quoting *Archuleta v. McShan*, 897 F.2d 495, 499 (10th Cir. 1990)).  That is, only if the "recklessness that can be fairly assimilated to purpose or knowledge should be treated as murder."  Commentary to MODEL PENAL CODE § 210.2, p. 22.  The mental state necessarily requires consideration of defendant's knowledge of the surrounding circumstances and what defendant should realize to be the degree of risk to human life.  2 Wayne R. LaFave, *Substantive Criminal Law* § 14.4(a), (b) (3d ed. 2018).  That is, only if a person consciously understands a known risk to human life may he be charged with second-degree murder.

The court concurs with the First Circuit that a "defendant who acts in this manner can more fairly be said to have actively employed force (*i.e.*, 'use[d]' force) 'against the person of another.'"

*Báez-Martínez*, 950 F.3d at 127.   Thus, Justice Kagan's concern regarding the reckless driver scenario does not apply as, in that example, the commuter runs a red light and hits a pedestrian *he did not see*.   *Borden,* 141 S. Ct. at 1827.   But to be culpable for second-degree murder, the defendant must be conscious of a risk *specific to a human life*, not just a real, generalized risk.   *Cf. Borden,* 141 S. Ct. at 1827.   That is, to be culpable of second-degree murder, the motorist would have had to have been aware of the risk to the specific pedestrian's life.   For this reason, depraved heart or malice aforethought is more akin to intentional and knowing conduct, rather than ordinary recklessness.   *See Searwop,* 510 at 663 n.4; *Begay,* 934 F.3d at 1046-47 (Smith, J., dissenting) ("[T]he extreme recklessness necessary to equate to malice aforethought is not and cannot be 'accidental.'   To the contrary, killing 'recklessly with extreme disregard for human life' most naturally suggests a higher degree of depravity or knowing disregard.").

Nor would the result change pursuant to Justice Thomas's concurring opinion in *Borden*. As stated above, in his *Voisine* dissent, which is incorporated into his *Borden* concurrence, Justice Thomas recognized that "use of physical force" includes cases "where a person intentionally creates force but recklessly applies it."   *Voisine,* 136 S. Ct. at 2285.   This is because, as the probability of harm increases, the actor's conduct gains "the character of intent."   *Id.* at 2288. Second-degree murder is characterized by reckless and wanton disregard for human life that is extreme in nature.   *Wood*, 207 F.3d at 1229.   Thus, a person who acts with malice aforethought acts with sufficient intent or "at least with knowledge that those consequences will ensue" to constitute a "use of physical force" as contemplated by Justice Thomas.

### b.      Commission of Certain Felonies

Mr. Kepler does not offer any specific argument or caselaw regarding the "commission of certain felonies" form of malice aforethought, but the government raises the issue in its

supplemental brief.   Accordingly, the court will briefly discuss this fourth form of malice aforethought.

In *United States v. Pearson*, the Tenth Circuit stated that "second degree murder's malice aforethought element is satisfied by . . . . commission of a felony when the crime does not fall under the first degree murder paragraph of § 1111(a)."[10]   203 F.3d 1243, 1271 (10th Cir. 2000). Subsequent Tenth Circuit decisions have interpreted *Pearson* to "suggest[]" the existence of second-degree felony murder.  *See United States v. Christie*, 717 F.3d 1156, 1174 (10th Cir. 2013) ("[W]e have suggested that a killing in the course of committing any felony satisfies the malice requirement for second-degree murder."); *United States v. Fortier,* 180 F.3d 1217, 1228 (10th Cir. 1999).  With respect to first-degree felony murder, "malice aforethought is proved by commission of the felony, [and] there is no actual intent requirement."  *United States v. Barrett*, 797 F.3d 1207, 1221 (10th Cir. 2015).  However, "*[i]n contrast*, the 'malice aforethought' that must be established for second-degree murder requires proof of malice *with respect to the homicide*."  *Chanthadara,* 230 F.3d at 1258 (emphasis added).  That is, in the context of second-degree murder, malice aforethought is not "proved by commission of the felony" alone.  Thus, in order to satisfy the second-degree malice aforethought requirement through commission of a felony, *Pearson* must be read narrowly.  To satisfy the standard, *Pearson* must be construed "as requiring the predicate felony to be . . . one whose required mens rea would, if transferred to the homicide, meet the

---

[10]  Section 1111(a) states:  "Murder is the unlawful killing of a human being with malice aforethought.  Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery; or perpetrated as part of a pattern or practice of assault or torture against a child or children; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree."

'malice aforethought' standard"—that is, through intent to kill, intent to do bodily harm, or depraved heart. *Christie*, 717 F.3d at 1174; *see also* 2 Wayne R. LaFave, *Substantive Criminal Law*, § 14.5(b) (3d ed. 2018). For the reasons discussed above, intent to kill, intent to do bodily harm, and depraved heart satisfy the intent requirement of a "crime of violence." Accordingly, the court concludes that second-degree murder is a "crime of violence" as defined by § 924(c). Mr. Kepler's motion for judgment of acquittal as to Count Two is denied in this respect.

### Conclusion

WHEREFORE, the Motion for Judgment of Acquittal Pursuant to Federal Rule of Civil Procedure 29(c)(1) [Doc. 112] of defendant Shannon James Kepler is granted as to Count Three of the Indictment, but denied as to Count Two.

IT IS SO ORDERED this 3rd day of September, 2021.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE